Good morning, Your Honors. May it please the Court and the Counsel, my name is Hollis McMillen. I'm here representing the appellants, Sherwood Park, or Sherwood Business Park, Terry Emmert, and Keith Janke. The Court, two weeks ago, threw us a bit of a curveball on the question of jurisdiction and asked that we come today prepared to address first the question whether this Court does have jurisdiction. And it directed us to two particular cases, which I will address, and I did address in my letter to the Court. First of all, the Court suggested that we should take a look at the Congrejo Court, the Congrejo opinion. The Congrejo opinion sets forth four factors that are to be looked at to determine whether or not the more pragmatic standard of finality should apply. Those four factors were the desire to avoid piecemeal litigation, whether or not accepting jurisdiction would promote judicial efficiency, whether or not the systemic interest in preserving bankruptcy courts' role as a fact finder would be furthered, and the final factor, whether or not there would be irreparable harm if jurisdiction was not found or taken. I've addressed each of those factors in my letter to the Court. There's one that I would like to expand upon, and that's the question of irreparable harm. In this case, there are two tracks going on. One, there's the track that's in Oregon State court. The second is the track that's come up through the Bankruptcy Court. One of the questions pending before the Oregon State court, of course, is whether or not my clients are entitled to their attorney fees. The Oregon Court of Appeals has recently rendered an opinion on a part of the State court case, and that was its opinion on the merits of the appeal, and they have sustained the judgment of the trial court with regard to the merits. There's a second appeal pending that the Court has not yet addressed, and that is the question of Mr. Berman's client's appeal of the attorney fees. And while I can't cite any specific authority from the Court, it appears that the Oregon Court of Appeals is awaiting a final ruling on whether or not my clients are entitled under the bankruptcy rules to have their attorney fees before that case is decided. And here's the problem that I see and where the irreparable harm comes from. In State court, the question is not whether or not my client should be held in contempt, the issue that was before the Bankruptcy Court, but rather the issue is whether or not there was a voluntary return to the fray. This is the issue that's presently before this Court. If this Court denies jurisdiction, the opinion of the district court will stand that Mr. Taggart did not voluntarily return to the fray, and that matter will then go back to the Bankruptcy Court for a determination whether or not my client should be held in contempt. So the case as it was brought to the Bankruptcy Court was that Mr. Taggart said a motion for contempt and sanctions because your client violated the discharge order. Correct? Yes. And so your client raises a defense that Mr. Taggart voluntarily returned to the fray. Yes. And the Bankruptcy Court said, yes, he did. The district court reversed it. But in reversing it, then, that revives the contempt, Mr. Taggart's contempt action. And so as Hupai said, I guess, the matters on remand concern factual issues, but there is a dispute, right, about whether or perhaps there isn't a dispute. Is there a dispute on whether Mr. Taggart's entitled to sanctions because your client voluntarily or knowingly breached the discharge order? Is there a dispute on that? Yes, I think there is a dispute on that. So is that a factual issue and dispute that would be determined on remand? That's a great question, and I can't answer it, because in the Bankruptcy Court's findings, there was a specific finding made that Mr. Taggart, before the Bankruptcy Court, had not proven by clear and convincing evidence that there was a willful violation of the injunction. So that finding was not appealed. It wasn't part of what Mr. Taggart took to the district court. So my argument would be that having made the findings that there was no willful violation of the injunction, there's nothing left for the Bankruptcy Court to determine on that issue. Well, I guess I'm not totally understanding this, because if the Bankruptcy Court held that even if Mr. Taggart had not voluntarily returned to the fray, there was the – your client was not sanctionable because there was no knowingness, then isn't the case over? I mean, isn't that moot, then? Or am I misunderstanding? Okay. So where did the Bankruptcy Court make that finding? Is that in its decision? Yes. I can't cite you to the specific page, unfortunately. My memory doesn't permit that. But there are two places in the Bankruptcy Court's findings and recommendations in which it specifically states that the court finds that Mr. Taggart failed to prove by clear and convincing evidence that there had been a willful violation of the injunction. Is that cited in your briefs? Yes. Did you bring your briefs? Yes. It's on page 40. Page what? Page 40 of the excerpt of record. The first full paragraph, final sentence. As noted above, the burden of proof to prevail on a motion for contempt is clear and convincing evidence, and I further find that Mr. Taggart has not met that burden. In his conclusion, the Bankruptcy Court says, based on the foregoing findings of fact and Mr. Taggart re-engaged in the circuit court lawsuit, and he did not meet his burden of proof to establish by clear and convincing evidence that the Respondents willfully violated the discharge injunction. So in those two places, again, that's found at page 40 of our excerpt of record, there's that specific finding. I'm not seeing it. I'm sorry, Your Honor. I'm just saying, I guess I'm not seeing it. Maybe I have the wrong. It's in volume one of our excerpt. Well, you know, this raises the related question. Just on the issue of whether or not Mr. Taggart returned to the fray, right? I guess that's a phrase that's used. Is the district court's finding on that or whatever it's called, determination on the issue, is that subject to the clear error standard or is it de novo review? I believe that's subject to the clear error standard, Your Honor. I think the law in the circuit is clear that when you're reviewing the findings in bankruptcy court, both by case law and by rule, this court or the district court as sitting as an appellate court can only reverse the factual findings if it finds clear errors. When it's looking at a mixed question of law and fact, if it's a mixed question in which the questions of fact prevail, then it applies the clear error standard to the findings of fact and the de novo standard to the issues of fact. And that is where I think the district court went wrong in this case, and that is clear from the district court's opinion that it believed its role was to review the entire case de novo, and it did not apply the more deferential clear error standard in reviewing the district court's findings of fact. And it's also abundantly clear from the record that the bankruptcy court felt that it was engaged in a very intense factual finding and factual review of the record below. So I think it's abundantly clear from the record that the district court not only applied the wrong standard, but under the clear error standard, it couldn't do what it did and simply reversed. Is there any dispute between the parties here as to whether the facts presented to the bankruptcy court are undisputed? Well, a number of the historical facts are undisputed, but I think the primary fact that is in dispute is with regard to whether or not there was a voluntary return to the fray. And there is a significant dispute as to that. Mr. Taggart suggests that he didn't want to be back in the fray, that he was only trying to defend himself, taking certain minimal, minor steps to keep himself out of the fray. But the historical facts of what happened when are not disputed. Is that correct? No, no. Those are not in dispute at all. I think they're pretty much stipulated, too. So the question, I think, the question that was asked by the state court, the question that was asked by the bankruptcy court was, was this voluntary or not? And Judge Letourneau, the state court judge, determined that it was indeed voluntary and his finding was that this was a pattern by Mr. Taggart. Oh, my goodness. We reserve at least a couple of minutes here. Okay. Good morning. John Berman appearing on behalf of the appellee, Mr. Taggart. The facts are undisputed. I agree with Mr. McMillan. The historical facts are undisputed. And because they're undisputed, the only question is what the legal impact is, what conclusion you draw from them. Well, what do we do? I'm sorry. Go ahead. Well, isn't there a dispute, however, as to the inferences that the bankruptcy court reached from the undisputed facts? The inferences that the district court took in looking at the undisputed facts. No. The bankruptcy court appears to have inferred that the undisputed facts show a motive and an intent to reenter the fray. The district court appears to me to have concluded, inferred from the undisputed facts, that they did not reenter the fray by failing, for example, to dismiss the counterclaim and the other things that occurred. Is that what occurred here? No. Let me explain why. And I don't mean to be curt in that. The question in Ray Ybarra and what it raises is conduct, not some attempt to figure out what may or may not have been in someone's head, but what they did. Because the question of, quote, unquote, returning to the fray means you have engaged in conduct which causes the other party to incur legal expense for which you should be responsible. This is not a question of intent. Even if it were, there is no possible inference to be drawn from what occurred, that Mr. Taggart had any different intent other than to not have anything more to do with this as he testified uncontested. Let us look at the — and you're correct, because this whole dispute, what they've done is they've grabbed hold of the fact that in the request for a dismissal of the claims and to have him dismissed from the case, he did not say, and by the way, I won't be asking for attorney's fees. The concept of counterclaim is my mistake, or I say mistake, my fault. It is not a counterclaim to ask for attorney's fees. Under the Oregon Rules of Civil Procedure, ORCP 68, and I suspect that Federal Rules are the same, I think they are, you must allege — let me just leave that aside, because I have to look at the Federal Rules expressly. Under the Oregon Rules of Civil Procedure, you must set forth in your pleading whether you claim at the end of the case you will ask for legal fees, and if so, what's the basis for it. Under the Oregon Rules of Civil Procedure, it is not something that occurs at a trial. After a judgment is entered, and sometimes it's combined after the hearing as part of the final judgment, but under the Rules of Civil Procedure, ORCP 68, after a judgment is entered, you have 14 days to request attorney's fees. It's not part of the regular case. It's not one of your claims. It's a request for attorney's fees, and in the same nature as costs. It's all part of the cost procedure, and it occurs after a judgment. It was legally impossible for Mr. Taggart to have be dismissed because of his bankruptcy and claim attorney's fees later. It could not possibly be done illegally. If someone's at fault, you're looking at him, but it never dawned on me that someone would make an argument that was illegally impossible. When Mr. Taggart asked to be dismissed from the case as a matter of law, he was saying, I cannot recover for prevailing on the merits because I can't prevail on the merits because I want out of here. I have no interest in this litigation. So the entire thought process was failed, and in the district court's opinion, the district court got it right, and he explained that. Judge Mossman explained there couldn't be any claim, and in fact, once the judgment was entered, understand that the claims on the merits were dismissed against Mr. Taggart on the merits. Judge Letourneau actually found that we have strange histories sometimes in trials. He said he wouldn't enter a money judgment. When we got to the end of the trial, he must have forgotten that because he found as a matter of fact that the claims against Mr. Taggart were unfounded and they were dismissed on their merits. Mr. Taggart still did not file a request for attorney's fees, even though at that point, in theory, he could have under what they're contending. So it's a bogus argument that has gone sideways, but the request to dismiss the claim by as a matter of law prohibited him from seeking claims, attorney's fees on the merits, had it been granted. And at the time, nobody said, what about your attorney's fees? Are you giving that up, too? It's an after-the-fact attempt to get Mr. Taggart. Let me ask you a slightly different question raised by opposing counsel. So if the bankruptcy court essentially made the key factual finding that Mr. Taggart hadn't shown that SPBC knowingly violated the discharge injunction, so what's left, what would be left even on remand if that ultimate question has been decided? Mr. Taggart is now entitled to sanctions. There's no contempt. The reason the judge said that was because he found Mr. Taggart returned to the claim. Well, he made a different statement, right? He made a finding, as opposing counsel noted, the burden of proof to prevail in a motion for contempt is clear and convincing evidence, and I find that Mr. Taggart has not met that burden, and he goes on to say he did not meet his burden to establish by clear and convincing evidence that the Respondent willfully violated the discharge injunction. So given those holdings, the bankruptcy court, it doesn't even matter if this issue is this issue now moot, because the bankruptcy court decided the ultimate issue about knowingly violating the discharge order. I think it's a red herring, but why is it a red herring? Because if you read the bankruptcy court's opinion, what he said was, I have to decide whether he returned to the fray or not. The judge was not ruling whether to understand to intentionally violate the discharge injunction, there are two issues. One, you must know of the discharge injunction, and, two, you must act intentionally or you must voluntarily act. It doesn't matter. Kagan. Was that issue litigated before the bankruptcy court? No. We never got to it. Well, let me say it wasn't litigated. It was not litigated in that sense, because there's no question we litigated in the State court the bankruptcy injunction, and they admitted that they acted voluntarily. The district neither the bankruptcy judge nor the district court were really ever   voluntarily. Now, let's consider, did these folks know of the injunction and did they act intentionally, which is the standard of this conclusion? The bankruptcy judge, when you read his opinion, was referring to the fact that you can't prove that they intentionally violated the injunction if you return to the fray, because then they didn't violate the injunction. Those two things go hand in hand. There's not a separate finding that they didn't know of the injunction and they didn't act voluntarily. So, if on remand, it's still before the bankruptcy, so the district court remanded the bankruptcy court, and the bankruptcy court then, in your view, would still need to determine the factual issue of whether SPBC knowingly violated the discharge injunction. Is that your position? The bankruptcy court would still have to? I think what's happening in part is some language questions, but let me answer a little bit. I don't think that there's a serious factual question on that. I think, but I do think, knowing the case as well as I do, that they are likely to argue that they asked the State court to impose attorney's fees only if the State court agreed they could. And our position in answer to that question is that you take, you act at your peril, which is what the cases say. The Federal cases say, if you want the State court to make that determination, if you're wrong, you act at your peril. Okay. So that's a litigating position before, I guess, the bankruptcy court as to whether they knowingly violated or not, and they have a theory and you don't like their theory. But given, assuming that that's correct and that the bankruptcies, the language that opposing counsel pointed to in the bankruptcy opinion doesn't mean it resolved that issue, and there's more to be done, why then is this case final for purposes of 150AD and properly before us? It isn't. It is not final. I agree with that. And the reason it's not final is it's a finding that they are on the liability side that he didn't return to the fray. Had he returned to the fray, he would then have no claim. Because he didn't return to the fray, he has a claim. And so it's not final. And I thought, you know, we spent a – we read the cases. There are actually two 2012 cases also in the Ninth Circuit involving when's final and not final, one's published, one's not. And I would say that under all of these four cases, the two you asked us about and the two that I found yesterday, it's not a final order. And as I try to figure out what these cases all mean and try to apply your standards, I would say two things that may or may not be helpful. First of all, the right to appeal something like this is really an interlocutory appeal, and there is a procedure for it. 1290 – 28 U.S.C. 1292 and 28158D2, I think, each provide for interlocutory appeals if the – if the district court had thought it was appropriate or if the parties agreed. There is a process to have these interlocutory appeals, which is not being used here. The second thing that I got from reading all these cases is that, as far as I can see, this Court has some cases where you use the flexible standard, where there's something there that is complex analytically, and you're deciding a complex legal issue to give the court below guidance to help them complete the case efficiently. And that's how I interpret all these matters. When I look at this case, I see it's just a linear case, liability and damages. It needs to go back. The bankruptcy court needs to decide what the harm was from the contempt, set sanctions, and then people will decide whether or not they want to appeal. It may be that the sanctions aren't sufficiently great. We may not get what we want. But it's premature to ask you to take a piece of this case now, and it's exactly what you talked about with piecemeal litigation. Statute of limitations or an equitable tolling issue that this Court said in Congrejo is going to distort more. This is a run-of-the-mill case dependent upon the facts, which needs to finish its process down below before being before you. I don't think it meets any of the standards for finality. It's just asking you to review the significance of the facts that are completely undisputed. And I would say, everybody, there's no possible inference or no fact indicating Mr. Taggart did anything. When you read the cases where they talk about the in rei barra, where somebody affirmatively goes back and litigates and litigates and litigates, and the courts have said, if you want to continue to argue with folks, you've got to be responsible for it. Mr. Taggart did everything he could to get out of this, and he couldn't get out. No matter what he did, he was pulled back in. And there's nothing in this record that suggests that he won anything to do with this litigation. He had been paid for his interest. He felt he had no right to anything more. He wanted out. And he tried to get out. They wouldn't let him out. And then they assessed him for legal fees for litigating with B.T. of Sherwood, which claims the interest. And there is a petition for review before the Oregon Supreme Court on the underlying case. I don't think it has any bearing on the decisions before you. The case itself is a rather unusual one with some very peculiar consequences for limited liability companies, but it doesn't concern you. So I have those other two Ninth Circuit cases. If you don't have them, if it's at all helpful. But that's how I look at your finality issue, is that if it's not going to be something where it's complex and you're just being asked to re-decide a factual issue or applying a lot of the facts, it's straightforward, you're going to end up encouraging these kinds of appeals. And I would submit that it's – that if I understand your opinions, that you don't want to encourage appeals like this. You would like to only have your time spent on deciding issues that need guidance below. Thank you. Thank you. Roberts. Just a couple of points I'd like to make. First of all, with regard to the Ibarra case, which is the controlling precedent, Mr. Berman, in all of his arguments, seems to ignore and read out of the case the word voluntary. He constantly speaks in terms of not a voluntary return to the fray, but simply a return to the fray. And I think that you're absolutely right that what happened in the State court and what happened in the bankruptcy court is both of those judges who had an opportunity to see the way this litigation played out, to hear witnesses' testimony, to hear the lawyers argue, were clearly of the opinion that what Mr. Taggart did, he did purposefully. He voluntarily reinserted himself into a case in which he did not need to be. Because I know you have limited time, but I'm concerned. I'd like you to address the opposing counsel's argument that the bankruptcy court finding on whether there was an establishment that Respondents willfully violated the discharge injunction doesn't mean that the bankruptcy court actually made that finding. I'm sorry. Say that the bankruptcy court didn't actually make a factual finding that there was no violation of the discharge order because there was no willful violation, and opposing counsel said, no, the bankruptcy court did not make that finding, it was wrapped up in its return to the fray analysis. Is that correct? Do you agree with that? Absolutely not. As is clear from the way the opinion is written, it is very, very carefully done. This is not a hastily thrown together opinion. The judge is very meticulous in addressing every single legal issue and in parsing through all the factual evidence and set it all out in his opinion. He put that in there for a reason, certainly. He wasn't just saying, oh, I better put this in at the end. And it was his considered opinion, having heard the evidence and having considered all the legal arguments that were made, that Mr. Taggart failed in his burden to prove by clear and convincing evidence that there had been a willful violation of the injunctions to exactly what he says. And I presume that's exactly what he meant because he said it twice. So, I mean, the opinion says what it says. And I guess we can disagree as to the import. But given the way that opinion is written, the care with which it's written, the number of issues that it addresses, I think he intended it to mean exactly what it says. So the district court remanded to the bankruptcy court thought there was more to be done, but in your view, it's all been done already by the bankruptcy court, is that correct? That's correct. That's correct. And secondly, I'd like to address just briefly the question of jurisdiction again. Mr. Berman and I read these cases very, very differently. It appears to me that the Ninth Circuit, over the past many, many years, has adopted this pragmatic standard for determining finality. It is in any number of cases, and notwithstanding the suggestion in a couple of cases, that this pragmatic standard is not consistent with the holding in Germain. Nonetheless, the court persists in finding that there is a different finality standard that's to be applied in cases such as this. And it's offered different guidance to counsel. And there's this sort of divergence, I guess, of opinion as to whether or not you follow the four-factor biling test that's been adopted in the Congrejo case, or whether you adopt a simpler standard which is more consistent with the Sambos approach, which is what we first started, which is if you've got a clear legal issue in front of you, and the remand is going to address issues that won't impact that legal decision, then you look and see, can we review this, do you have jurisdiction? I took you over your time, but if you could just wrap up, I'd appreciate it. Well, that's all I had to say. Thank you very much. Thank you. The case of Taggart v. Brown is submitted, and we're adjourned for this session and the week.
judges: Alarcon, Tashima, Ikuta